IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NINA SHAHIN, | : |
| | : |
| Plaintiff, | : |
| | : **CONSOLIDATED** |
| v. | : Civ. No. 10-475-LPS |
| | : |
| DELAWARE FEDERAL CREDIT UNION, | : |
| | : |
| Defendant. | : |

Nina Shahin, Dover, Delaware, Pro Se Plaintiff.

Michael W. Arrington, Esquire, Parkowski, Guerke & Swayze, P.A. Counsel for Defendant.

**MEMORANDUM OPINION**

September 19, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Nina Shahin ("Plaintiff") filed this action pursuant to the Expedited Funds Availability Act ("EFAA"), 12 U.S.C. § 4001 *et seq.* The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court are Plaintiff's motion to amend (D.I. 43) and the parties' cross-motions for summary judgment (D.I. 47, 50). For the reasons that follow, the Court will grant the motion to amend, will grant in part and deny in part Plaintiff's motion for summary judgment, and will grant in part and deny in part Defendant's motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed two lawsuits regarding a $2,500.00 check deposited into her account on May 10, 2010. *See Shahin v. Delaware Fed. Credit Union*, Civ. No. 10-475-LPS; *Shahin v. Delaware Fed. Credit Union (Del-One)*, Civ. No. 10-597-LPS. The complaints involve similar allegations and were consolidated on September 28, 2010. (*See* D.I. 6) The consolidation Order states, "[t]he complaint (D.I. 2) filed in Civil Action No. 10-475-GMS, and the complaint (D.I. 2) filed in Civil Action No. 10-597-GMS, together, will stand as the complaint in this Consolidated Action." (D.I. 6) On September 4, 2012, the Court denied without prejudice to renew a motion to amend filed by Plaintiff. (*See* D.I. 19, 42) Plaintiff filed a renewed motion to amend on September 18, 2012 (D.I. 43) and, prior to a ruling on the instant motion, Defendant answered the proposed amended complaint (D.I. 45). The Court will grant the motion to amend and will instruct the Clerk of Court to file the amended complaint instanter.

1

Plaintiff alleges that Defendant did not comply with the requirements of 12 C.F.R. §§ 229.12, 229.13, 229.21(a), and 229.38(a) when it failed to provide her timely access to monies she deposited into her checking account. In May 2010, Plaintiff received two NSF (i.e., "non-sufficient funds") fees, and in June 2010 Defendant levied three check overdraft fees. The Amended Complaint adds a claim pursuant to 18 U.S.C. § 1341 "under the provisions of well-established common law principle of 'principal-agent relationship,' breach of fiduciary duties and 'frauds and swindles.'" Plaintiff seeks one million dollars for court fees, loss of time, and damage to her health.

The record reflects that on May 10, 2010, at 10:50 a.m., Plaintiff deposited a $2,500.00 check into her joint checking account (i.e., Golden Advantage) at the Del-One Federal Credit Union. (D.I. 51 Exs. A-1, A-2; D.I. 52 Ex. B-13) The check was drawn on her daughter's Wells Fargo Bank account in Portland, Oregon. (D.I. 51 Ex. A-1) The deposit was placed on a "Local Hold" of two business days for verified checks. (*Id.* at Exs. A-1, A-4)

During her deposition Amanda Dickerson ("Dickerson"), a member service representative for Defendant, testified that she recalled seeing the check and looking at the signature on it. (D.I. 52 Ex. B-9) The signature on the check was not the same as the cursive handwriting on the line "2,500 only." (*Id.* at Ex. B-9) This raised concerns about the validity of the check. (*Id.* at Ex. B-11) Dickerson further explained that when a check is deposited, if it is for more than $1,000, the average daily balance is checked and, if, for the last three months the daily balance is lower than $1,000, then the check must be verified. (*Id.* at Exs. B-11, B-12) Dickerson called the paying bank and gave it the account number but learned that it did not verify funds due to third-party privacy concerns. (*Id.* at Exs. B-12-B-13) Once Dickerson learned that the check could not be

2

verified via telephone she consulted her manager and they "went to the policy of a fifteen day hold." (*Id.* at Ex. B-13) At 11:44 a.m., the $2,500.00 was put on a fifteen day hold and deposited into Plaintiff's savings account (i.e., Shares). (*Id.* at Exs. B-3, B-15) Dickerson testified that if the issuing institution will not verify the fund balance, then bank policies and procedures direct her to deposit the monies into the Shares account, rather than the checking account. (*Id.* at Ex. B-18)

Dickerson testified that there were attempts to make telephone calls and that she made notes to Plaintiff to let her know that they were working on the situation. (D.I. 52 Ex. B-16) Dickerson also testified that she asked Plaintiff to return the first deposit slip but she would not.[1] (*Id.* at Ex. B-17) Dickerson testified that between the time she left to verify the check and when she returned, Plaintiff had left the bank without having given notice she was leaving.[2] (*Id.* at Ex. B-14) Dickerson explained that Plaintiff left without saying anything to anyone. (*Id.* at Ex. B-7)

Later on May 10, 2010, Dickerson wrote a letter to Plaintiff and advised her that,

> [u]pon making the deposit and contacting the issuing bank the check was unable to be verified. Due to the circumstances in which the check cannot be verified we are required to extended [sic] this hold to a Non-Verified Hold of 15 business days and place the funds into your Shares Account. Before you abruptly left the building, I was unable to inform you of this change. I am enclosing a new receipt showing the hold of 15 days and the new release date of the funds as of June 01, 2010.

(*Id.* at Exs. A-3, A-4)

---

[1] Plaintiff, who was questioning Dickerson at her deposition, argued with Dickerson that Dickerson did not ask for the return of the first deposit slip. (D.I. 52 Ex. B-17)

[2] Plaintiff interrupted the cross-examination of Dickerson with regard to whether Plaintiff gave notice that she was leaving and stated, "[o]f course I did. I ask[ed] her name." (D.I. 52 Ex. B-14)

The Complaint indicates that Plaintiff received the letter the following day. (D.I. 2 at ¶ 2) The funds were withdrawn from her daughter's account on May 10, 2010. (D.I. 2 Ex. 7) Dickerson explained during her deposition that the hold did not actually last fifteen days, but instead lasted two days. (D.I. 52 Ex. B-14) Plaintiff's Golden Advantage checking account statement summary for the period May 1, 2010 through May 31, 2010 ("May statement") reflects two $30.00 NSF charges; one on May 12, 2010 and one on May 14, 2010. (*Id.* at Ex. B-21) Both charges occurred after Bank of America made a presentment for payment but there were insufficient funds in Plaintiff's Golden Advantage checking account. (D.I. 2 Exs. 8-9) The May statement contains Share savings account information and reflects the $2,500.00 deposit on May 10, 2010, with a month end balance of $2,500.60. (D.I. 52 Ex. B-21)

Plaintiff's statement summary for the period June 1 through June 30, 2010 ("June statement") reflects three check payment overdraft fees totaling $6.00: specifically, $2.00 each on June 11, June 14, and June 30, 2010. (D.I. 51 Ex. A-5; Civ. No. 10-597-LPS, D.I. 2 Ex. D) The June statement reflects a Shares beginning June balance of $2,500.60 with transfers throughout the month to Plaintiff's Golden Advantage account on June 2, June 10, June 14, and June 30, 2010, totaling $2,485.34. (D.I. 51 Ex. A-5; Civ. No. 10-597-LPS, D.I. 2 Ex. D)

### III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed

must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The same standard applies when there are cross-motions for summary judgment. *See Lawrence v. City of Philadelpha, Pa.*, 627 F.3d 299, 310 (3d Cir. 2008).

## IV. DISCUSSION

Plaintiff moves for summary judgment as a matter of law on the bases that Defendant violated the EFAA and that the evidence establishes systematic violations of federal law. (*See* D.I. 48) Defendant opposes Plaintiff's motion and moves for summary judgment on the grounds that Plaintiff does not have a private cause of action under 18 U.S.C. § 1341 and the EFAA claims fail and/or are conclusory without applicable allegations of fact. (*See* D.I. 51) Defendant seeks dismissal of the complaint for failure to state a claim and to award costs.

### A. 18 U.S.C. § 1341

The amended complaint raises a claim pursuant to 18 U.S.C. § 1341. Plaintiff, however, has no private right of action under the statute. *See Jones v. TD Bank*, 468 F. App'x 93, 94 (3d

Cir. Mar. 14, 2012). A provision of the Criminal Code, 18 U.S.C. § 1341 may only be prosecuted by the government, and provides no general private cause of action for damages in civil suits. *See Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (violation of 18 U.S.C. § 1341 does not give rise to private cause of action); *Tribble v. Reedy*, 1989 WL 126783, at *1 (4th Cir. Oct. 20, 1989) (affirming dismissal of suit "alleg[ing] violations of 18 U.S.C. § 1341 because the statute constitutes a 'bare criminal statute' which gives no express indication of Congressional intent to create a civil remedy"); *Jones v. Lockett*, 2009 WL 2232812 at *8 (W.D. Pa. July 23, 2009) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371 and 1341 do not provide for a private cause of action. In other words, those statues do not confer a right to a person.") (collecting cases); *Barrett v. City of Allentown*, 152 F.R.D. 50, 55-56 (E.D. Pa. 1993) (no private cause of action exists under 18 U.S.C. § 1341).

Plaintiff's claim pursuant to 18 U.S.C. § 1341 fails as a matter of law. Therefore, the Court will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment on the claim.

### B. Expedited Funds Availability Act

Both parties seek summary judgment on the claims raised under the EFAA and its implementing regulations, 12 C.F.R. pt. 229. The EFAA, also known as Regulation CC, was enacted for the purpose of standardizing hold periods on deposits made to commercial banks and to regulate institutions' use of deposit holds. *See Bank One Chi., N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 266 (1996).

6

Plaintiff seeks summary judgment on the grounds that Defendant did not comply with the requirements of 12 C.F.R. § 229.12 (availability schedule), § 229.13 (exceptions), § 229.21(a) (civil liability), and § 229.38(a) (liability), while Defendant contends that it complied with the requisites of the EFAA and had legal justification to take the actions it did.

### 1. Fund Availability and Notice

Under 12 C.F.R. § 229.12, a depositary bank must make funds drawn on a local check available two days following the deposit, with more time given to make nonlocal check funds available. *See* 12 C.F.R. § 229.12(b)(1), (c)(1) (2010). The regulations also provide exceptions. Plaintiff argues that Defendant violated § 229.13(g)(ii) when she received the initial deposit slip that indicated the availability of funds on May 12, 2010, but followed it with the May 10, 2010 letter and second deposit slip noting a different time of deposit. In addition, Plaintiff argues that the May 10, 2010 letter did not specify the reasonable cause to doubt that the check was uncollectible.

Under Regulation CC, Defendant could extend, for a reasonable period, the time at which it would make the funds available for the item deposited in Plaintiff's account, if it had reasonable cause to believe the item was uncollectible and gave Plaintiff written notice. *See* 12 C.F.R. §§ 229.13(e), (g), (h). "Reasonable cause to believe a check is uncollectible requires the existence of facts that would cause a well-grounded belief in the mind of a reasonable person." 12 C.F.R. § 229.13(e)(1).

Under Regulation CC, when the depositary bank extends the time when funds will be available for withdrawal based upon the application of an exception, it "must provide the depositor with a written notice." 12 C.F.R. § 229.13(g)(1) (2010). The notice shall include a

7

number or code that identifies the customer's account, the date of the deposit, the amount of the deposit that is being delayed, the reason the exception was invoked, and the time period within which the funds will be available for withdrawal. *See* 12 C.F.R. § 229.13(g)(1)(i) (2010). In addition, the notice shall be provided to the depositor at the time of deposit unless the facts upon which a determination to invoke one of the exceptions to delay a deposit only become known to the depositary bank after the time of the deposit. *See id.* at § 229.13(g)(1)(ii). If the notice is not given at the time of the deposit, the depositary bank shall mail or deliver the notice to the customer as soon as practicable, but no later than the first business day following the day the facts become known to the depositary bank, or the deposit is made, whichever is later. *See id.*

The undisputed facts show that Plaintiff presented a check for deposit drawn on a bank in Oregon, there was a difference in handwriting on the check, and there was an unsuccessful attempt by Defendant to verify the check, all of which gave Defendant reasonable cause to believe that the check was uncollectible from the paying bank. During the attempt at verification, Plaintiff left the premises. The same day that Defendant was unable to verify the check, it notified Plaintiff by letter and provided her a new deposit receipt that she received the following day. The notice and enclosed deposit receipt met the statutory notice requirements. They identified the Share account, provided the May 10, 2010 deposit date, and indicated that $2,500.00 was being delayed and that the funds would be available as of June 1, 2010. Finally, the notice provided the reason the exception was invoked: "upon making deposit and contacting the issuing bank the check was unable to be verified."

While Plaintiff contends that 12 C.F.R. § 229.13(g) requires notice at the time of the deposit, she disregards that portion of § 221.13(g) that provides that if the facts upon which a

8

determination to invoke one of the exceptions only become known to the depositary bank "after the time of the deposit," then the bank "shall mail or deliver the notice to the customer as soon as practicable but no later than the first business day following the day the facts become known to the depositary bank, or the deposit is made, whichever is later." 12 C.F.R. § 229.13(g)(ii). It is undisputed that once it became known to Defendant that it was unable to verify the check with the paying bank, it immediately provided Plaintiff notice. The evidence of record indicates that Defendant complied with the requisites of § 229.13. Because Defendant complied with § 229.13(g), Plaintiff's claim that Defendant violated § 229.10 and § 229.12 for availability of funds fails as a matter of law. *See* 12 C.F.R. § 229.13(e)(1) ("Sections 229.10(c) and 229.12 do not apply to a check deposited in an account at a depositary bank if the depositary bank has reasonable cause to believe that the check is uncollectible from the paying bank.").

### 2. **Overdraft or Returned Check Fees**

Plaintiff claims that Defendant violated §§ 229.13(e)(2)(i) and (ii) when it assessed two NSF fees totaling $60.00 and three check overdraft fees totaling $6.00 without giving notice in the May 10, 2010 letter. Sections 229.13(e)(2)(i) and (ii) provide that a bank which does not give notice may not assess any fees for any subsequent overdrafts or return of checks if the overdraft or return would not have occurred except for the fact that the deposited funds were delayed, as long as the deposited check is paid by the paying bank.

Section 229.13(e)(2) goes on to state that,

> Notwithstanding the foregoing, the depositary bank may assess an overdraft or returned check fee if it includes a notice concerning overdraft and returned check fees with the notice of exception required in paragraph (g) of this section and, when required, refunds any such fees upon the request of the customer. The notice must state that the customer may be entitled to a refund of

9

> overdraft or returned check fees that are assessed if the check
> subject to the exception is paid and how to obtain a refund.

12 C.F.R. § 229.13(e)(2).

Here, the check subject to the exception was paid, but the May 10, 2010 notice of exception did not include information concerning overdraft fees, returned check fees, refunds, or how to obtain a refund. Defendant does not address this issue in its opposition other than to state that the exhibit to the amended complaint does not contain any of the two dollar charges. Plaintiff, however, included the complete June statement when she filed *Shahin v. Delaware Fed. Credit Union (Del-One)*, Civ. No. 10-597-LPS at D.I. 2 Ex. D, consolidated with the instant complaint. As previously discussed, the consolidation Order states, "[t]he complaint (D.I. 2) filed in Civil Action No. 10-475-GMS, and the complaint (D.I. 2) filed in Civil Action No. 10-597-GMS, together, will stand as the complaint in this Consolidated Action." (D.I. 6) The complete June statement, filed as an exhibit to the Complaint, reflects $6.00 in overdraft fees.

It is undisputed that the exception notice contained no information regarding overdraft and returned check fees and how to obtain a refund. Nonetheless, Defendant charged Plaintiff with insufficient fund fees and check overdraft fees subsequent to the time the funds were placed on hold and before their release.[3] The record reflects that, because the funds were deposited into the Share account and not the Golden Advantage account, the shortage in the Golden Advantage account caused Plaintiff to incur two NSF charges within two to four days from the date of

---

[3]Pursuant to 12 C.F.R. § 221.21, "a bank that fails to comply with any requirement imposed under subpart B [§ 220.10 through § 229.21] . . . with respect to any person is liable to that person in an amount equal to the sum of -- (1) Any actual damage sustained by that person as a result of the failure; (2) Such additional amount as the court may allow, except that-- (i) In the case of an individual action, liability under this paragraph shall not be less than $100 nor greater than $1,000.

10

deposition. The shortage in the Golden Advantage account continued through the month of June, resulting in three overdraft fees; i.e., one each time it was necessary to transfer money from the Shares account to the Golden Advantage account to cover payments. (By the end of June, $2,485.34 had been transferred from Shares account to the Golden Advantage account.) Plaintiff was not notified that she would incur these fees. Accordingly, the Court will grant Plaintiff's motion for summary judgment on the issue of fees.

### 3. Training

Plaintiff raises a new issue in her motion for summary judgment: that Defendant did not train its employees as required by 12 C.F.R. § 229(f). This issue was not raised in the consolidated complaints or the recently filed amended complaint.

A plaintiff cannot raise a claim for the first time at the summary judgment stage if it was not included in the complaint. *See Bell v. City of Philadelphia*, 275 F. App'x. 157, 160 (3d Cir. Apr. 23, 2008) (holding that, at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with the Fed. R. Civ. P. 15(a)); *see also Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987) (rejecting a claim the appellants raised for the first time in their motion for summary judgment as outside the scope of the pleadings as well as not a matter of record). Because Plaintiff raises the failure to train claim for the first time in her motion for summary judgment, the Court will not consider the claim.

Accordingly, Plaintiff's motion for summary judgment on claims pursuant to 12 C.F.R. § 229.19(f) will be denied.

### 4. Liability under § 229.38

Defendant moves for summary judgment on claims raised by Plaintiff pursuant to 12 C.F.R. § 229.38, on the grounds that Plaintiff fails to state a claim due to the failure to identify facts or specify the subsection of § 229.38 invoked.

Plaintiff's claims under the EFAA arise under Subpart B of Regulation CC. The liability and jurisdictional sections for Subpart B are found at § 229.21. Section 229.38 contains the liability and jurisdictional sections for Subpart C, which concerns the collection of checks. Section 229.38 is inapplicable to Plaintiff's claims. Therefore, the Court will grant Defendant's motion to dismiss the claims raised pursuant to § 229.38.

## V. CONCLUSION

For the above reasons, the Court will grant the motion to amend (D.I. 43), will grant in part and deny in part Plaintiff's motion for summary judgment (D.I. 47), and will grant in part and deny in part Defendant's motion for summary judgment (D.I. 50). An appropriate Order will be entered.